UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RYAN KOENIG, JAMES KOENIG, II, on behalf of themselves and all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 4:13CV00477 SNLJ |
| BOURDEAU CONSTRUCTION LLC, ) ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case comes before the Court on Plaintiffs' Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil to enforce their judgment against defendant. [#62]. Plaintiffs wish to reach the assets of defendant's alleged alter egos Bourdeau Contracting and James M. Bourdeau in order to satisfy a judgment against Bourdeau Construction. The matter has been fully briefed and is ready for disposition. For the following reasons, the motion will be granted in part.

### I. Factual Background

Plaintiffs were former employees of defendant Bourdeau Construction L.L.C. who brought suit against defendant alleging that the plaintiffs were not paid in accordance with the Fair Standards Labor Act, 29 U.S.C. § 201, *et seq.* and Missouri's wage and hour laws. On June 20, 2014, defendant made an Offer of Judgment in favor of plaintiffs and against defendant for all causes of action alleged in the plaintiffs' complaint. [#32]. On

July 10, 2014, plaintiffs accepted defendant's offer of judgment and subsequently filed a Motion for Attorneys' Fees and Costs. [#32-33].  On November 26, 2014, this Court entered its Memorandum and Order granting Plaintiffs' Motion for Attorneys' Fees and Costs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Federal Rule of Civil Procedure 68. [#42].  On January 20, 2015, this Court entered a judgment in favor of plaintiffs and against defendant in the amount of $37,282.01, which included attorneys' fees in the amount of $25,054.10 and costs in the amount of $563.55. [#44].

On December 2, 2015, plaintiffs filed this Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil of Bourdeau Construction to enforce plaintiffs' judgment against Bourdeau Construction's alleged alter egos, Bourdeau Contracting, L.L.C. ("Bourdeau Contracting") and James M. Bourdeau ("Bourdeau") personally. [#62].  To date, the plaintiffs have recovered nothing from the January 20, 2015 judgment against defendant.

Defendant opposes plaintiffs' motion on the basis that 1) Bourdeau Construction did not have sufficient control over Bourdeau Contracting and/or Bourdeau to make either a mere alter ego of Bourdeau Construction, 2) there is no evidence of improper actions on the part of Bourdeau Construction regarding Bourdeau Contracting and/or Bourdeau, and that no control was used to commit a fraud or wrong or violate a positive legal duty, and 3) there is no evidence that any alleged control by Bourdeau Construction over Bourdeau Contracting and Bourdeau breached a duty that proximately caused plaintiffs' injuries. [#67].

The two limited liability companies have many similarities between them. Bourdeau Construction and Bourdeau Contracting both were created on April 1, 2004. Bourdeau is the 100% owner, sole member, and registered agent for both companies. Both companies share the same billing address --- Bourdeau's home address. However, they are slightly different. Each company maintains its own employment identification numbers. They have separate bank accounts and websites.[1] In regard to services offered, Bourdeau Construction engaged in building and remodeling residential homes, residential home additions, decks, kitchens, bathrooms, and basements, but the majority of its work was building maintenance for commercial restaurants, including roofing work for those commercial customers. Bourdeau Contracting's services, in contrast, are limited to roofing work.

Bourdeau, in an affidavit, submitted evidence that Bourdeau Construction's business slowed down significantly in 2013 and 2014 when many of its commercial customers "sold out" to franchisees. During this time period, Bourdeau Construction lost roughly eighty percent (80%) of its business revenue. According to the affidavit, Bourdeau Construction had a net income of approximately $35,986 in 2012, $39,038 in 2013, and sustained a net loss of $31,656 in 2014. To counter the losses in Bourdeau Construction, Bourdeau contributed over $40,000 of his personal funds to the company, and he has not been repaid for those contributions. None of this information is disputed

---

[1] Although the two entities had separate websites, Bourdeau Construction's website listed Bourdeau Contracting as the owner of the site.

by plaintiffs. Bourdeau Construction ceases to have any employees or assets, a bank account, or any customers.

Just two days after the Court's Memorandum and Order entered on November 26, 2014, Bourdeau Construction's bank records show that the company had a balance of $34,747.12. The highest balance between November 28, 2014 and December 31, 2014 was $43,754.80 on December 8, 2014. But by the end of December 2014, Bourdeau Construction's bank account was down to $8,901.31 and was completely empty by March 31, 2015.

During this critical time period, Bourdeau Construction's bank records show that on three occasions Bourdeau withdrew money from one company and deposited it into the other. In particular, on December 9, 2014, Bourdeau Construction transferred $1,000 to Bourdeau Contracting. On December 16, 2014, Bourdeau Construction transferred $6,900 to Bourdeau Contracting. On December 22, 2014, Bourdeau Contracting transferred $4,000 back to Bourdeau Construction. These transfers resulted in a net gain for Bourdeau Contracting of $3,900.00. Finally, Bourdeau Construction's last check went to Bourdeau himself for $1,030.61 on March 10, 2015.

Plaintiffs do not claim defendant improperly paid bills to other creditors. However, they contend that Bourdeau Construction's bank account was drained in a four month period and that the checks made between Bourdeau Construction and Bourdeau Contracting and Bourdeau himself are evidence of wrongdoing. These checks, however, resulted in only a $4,930.61 net loss to the account out of $43,754.80 total during the

four-month period. Plaintiffs tacitly concede that the difference was legitimately paid to other creditors.

## II. Legal Standard

In the absence of a controlling federal statute, the district court "has the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law." *H.H. Robertson Co. v. V.S. DiCarlo Gen.,* 994 F.2d 476, 477 (8th Cir. 1993) (quoting *United States ex rel Goldman v. Meredith*, 596 F.2d 1353, 1357 (8th Cir. 1979)). The Eighth Circuit has "recognized the availability of the creditor's bill in equity under Missouri law." *H.H. Robertson Co.*, 994 F.2d at 477.

## III. Creditor's Bill and Piercing the Corporate Veil

The creditor's bill in equity is a long-recognized equitable remedy "available to a creditor who seeks to enforce the payment of debts out of assets which cannot be reached by traditional means of execution on a judgment established in a suit at law." *Shockley v. Harry Sander Realty Co.*, 771 S.W.2d 922, 924 (Mo. App. 1989) (internal citations omitted). A court must find, prior to issuing a creditor's bill in equity, that there was (1) a judgment, (2) an issuance of an execution against the assets of the judgment debtor, and (3) a *nulla bona* return thereon. *Id.* at 925.

A creditor's bill "is considered the equitable equivalent of garnishment on execution and is comparable to proceedings supplementary to and in aid of execution." *Id*. at 925 (internal citations omitted). The creditor's bill, under Missouri law, allows the judgment creditor to "trace the value of goods and services rendered to an empty-shell corporation to the parties behind such a corporation who have received and benefitted

5

from the property or services." *H.H Robertson Co.*, 994 F.2d at 477. In other words, the creditor's bill allows the creditor to reach beyond the judgment debtor to the alter egos of that debtor. *See id.* at 478. The fact that a corporation's alleged alter ego was not an original party or judgment debtor, or even had formal notice of the proceedings, is irrelevant. *Id.* at 476, 478.

Piercing the corporate veil, on the other hand, is considered a distinct equitable remedy, though there is a substantial overlap with the creditor's bill. Both seek to recover fraudulently transferred funds on the basis that the entities that received those funds are the alter egos of the judgment debtor. It appears the main difference between the two remedies is that application of the creditor's bill has not been subject to a "rigid doctrinal development," William C. Jones, *The Use of Equity: Creditors' Bills*, 16 J. Mo. Bar. 182, 186 (1960), but in contrast, application of piercing the corporate veil is subject to well-established rules. As a practical matter, and in the absence of rules for applying the creditor's bill, many cases simply conflate the analysis by applying the rules pertaining to piercing the corporate veil to both remedies. *See, e.g., Carpenters District Council of Greater St. Louis and Vicinity v. Metro Acoustics, L.L.C.*, No. 4:09-CV-1311 CAS, 2011 WL 6056695 (E.D. Mo. Dec. 6, 2011); *Mobius Management Systems v. West Physician Search*, *L.L.C.*, 175 S.W.3d 186 (Mo. App. 2005); *Greater St. Louis Const. Laborers Welfare Fund v. Mertens Plumbing and Mechanical, Inc.*, 552 F. Supp. 2d 952 (E.D. Mo. 2007).

Actions to pierce the corporate veil "rest on an equitable doctrine used by courts to look past the corporate form and impose liability upon [those who control] the

6

corporation – be they individuals or other corporations – when [they] create or use the corporate form to accomplish a fraud, injustice, or some 'unlawful purpose.'" *Id*. (quoting *Blanks v. Fluor Corp.,* 450 S.W.3d 308, 375 (Mo. App. 2014)). Although Missouri law does not take the action of piercing the corporate veil lightly, when a corporation is so dominated by a person as to be a mere instrument of that person, and indistinct from the person controlling it, the court will disregard the corporate form if its retention would result in injustice. *Osgood v. Midwest Parking Solutions*, No. 4:07-CV-1365 SNLJ, 2009 WL 4825192 at *3 (E.D. Mo. Dec. 11, 2009) (citing *Mobius,* 175 S.W.3d at 188). The piercing the corporate veil analysis is highly fact-specific and depends on the equities of the situation at hand. *Blanks*, 450 S.W.3d at 376.

In order to pierce the corporate veil, a plaintiff must show: 1) control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice with respect to the transaction, such that the corporate entity had no separate mind, will, or existence of its own; and 2) such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or to commit a dishonest or unjust act in contravention of the plaintiff's legal rights; and 3) the control and breach of duty must proximately cause the injury or unjust loss. *Osgood,* 2009 WL 4825192 at *3 (citing *66, Inc. v. Crestwood Commons Redevelopment Corp.,* 998 S.W.2d 32, 40 (Mo. *banc* 1999)). Courts may consider piercing the corporate veil of an entity "upon finding that the entity is the alter ego of the defendant judgment debtor." *Greater St. Louis Const. Laborers Welfare Fund v. Mertens Plumbing & Mech., Inc.,* 552 F.Supp.2d 952, 955 (E.D. Mo. 2007).

7

### A. Control by Bourdeau Construction over Bourdeau Contracting

In determining whether one entity exercised control over another to the extent of piercing the corporate veil, the court looks to a number of factors: "the ownership and creation of both corporations, the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations." *Carpenters District Council of Greater St. Louis and Vicinity v. Metro Acoustics, L.L.C.*, No. 4:09-CV-1311 CAS, 2011 WL 6056695 at *3 (Dec. 6, 2011). Further, the Court looks to whether the entity has "the same business purpose, operations, equipment, customers, management, and supervision" as the other operation. *Woodline Motor Freight, Inc. v. N.L.R.B.*, 843 F.2d 285, 288 (8th Cir. 1988).

Control must be "in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Grote Meat Company v. Goldenberg*, 735 S.W.2d 379, 386 (Mo. App. 1987). The question is whether the individual "against whom the claim is asserted disregarded the corporation's existence as a distinct and separate legal entity, and instead used it as an extension of their own personal mind or will." *Commonwealth Land Title Ins. Co. v. Miceli,* 480 S.W.3d 354, 371 (Mo. App. 2015) (internal citations omitted).

In this case, this Court finds that the first element of piercing the corporate veil is met because Bourdeau Construction exercised complete dominion and control over Bourdeau Contracting. This conclusion holds even though Bourdeau Construction did not necessarily dominate all aspects of Bourdeau Contracting at all times. *Id*. at 371-372.

Although defendant claims that the control element is not met because each company has separate identities, the facts are at odds with this claim.

James M. Bourdeau is the sole owner and sole member of both Bourdeau Construction and Bourdeau Contracting. Bourdeau commingled the funds of the companies, as evidenced by his withdrawal of funds from Bourdeau Construction to pay Bourdeau Contracting's year-end bills and taxes, and vica versa. Bourdeau did not observe formal corporate formalities. Bourdeau Construction and Bourdeau Contracting shared the same facilities, billing address, same registered agent, and Bourdeau Construction's website listed Bourdeau Contracting as the site's owner. Bourdeau himself was solely in charge of Bourdeau Construction's accounts receivable. In addition, Bourdeau Construction and Bourdeau Contracting shared a sufficiently common business purpose. Although Bourdeau Contracting's work was exclusively roofing, a substantial part of Bourdeau Construction's work was roofing as well.

### B. Bourdeau Construction's Control Breached a Legal Duty to Plaintiffs

The second element of piercing the corporate veil is met where the defendant judgment debtor uses its control of a corporation to perpetrate the violation of a statutory or other positive legal duty, or to commit a "dishonest and unjust act in contravention of [a] plaintiff's legal rights." *Commonwealth Land Title Ins. Co.,* 480 S.W.3d at 373 (quoting *Collet v. American Nat. Stores, Inc.,* 708 S.W.2d 273, 284 (Mo. App. 1986)). Certainly defendant here owed the plaintiffs a positive legal duty to satisfy the judgment entered against it. Instead, defendant wrote checks to pay Bourdeau Contracting's year-end bills and taxes and even a check to Bourdeau personally.

### C. Bourdeau Construction's Breach of Duty Proximately Caused Plaintiffs' Damages

To satisfy the final element to pierce the corporate veil, the plaintiffs must show that the control and breach of duty by the defendant proximately caused the injury or loss of which the plaintiffs complain. *Fleming Companies, Inc. v. Rich,* 978 F.Supp. 1281, 1303 (Mo. E.D. 1997). The continuation of business activity by the alter ego business entities suggest that assets exist from which the plaintiffs may collect the judgment due to them. *Cement Masons Local 527 v. Stika Concrete Contracting Co., Inc.*, No. 4:14-CV-1030 JAR, 2016 WL 2894716 at *3 (E.D. Mo. May 15, 2016).

In this case, the proximate causation element is established by the shifting of assets from Bourdeau Construction to Bourdeau Contracting and Bourdeau. However, the shifting of these assets did not result in a benefit to Bourdeau Contracting or to Bourdeau, himself, except to the extent of $4,930.61, far short of the $37,282.01 judgment against Bourdeau Construction. As noted, between December 9, 2014 and December 22, 2014, Bourdeau Construction wrote checks to Bourdeau Contracting for $7,900 and received $4,000 back from Bourdeau Contracting, for a total benefit of $3,900 to Bourdeau Contracting. Additionally, Bourdeau Construction wrote a check to James M. Bourdeau in March 2015, with the last amount of money still in its account, for $1,030.61 and received nothing back. All other funds from Bourdeau Construction were paid to legitimate creditors other than plaintiffs. Despite the fact that plaintiffs were provided three years of Bourdeau Construction's bank records as part of the post-judgment assets discovery process, plaintiffs have failed to identify a single transfer of

funds to Bourdeau Contracting or Bourdeau other than the transfers in December, 2014. Accordingly, proximate cause exists to pierce the corporate veil only in the amount of $4,960.31, $3,900.00 attributable to Bourdeau Contracting, and $1,030.61 to Bourdeau.

### IV. Conclusion

To conclude, this is not the classic case of a shell company being used to defraud creditors. By 2014, Bourdeau Construction was a dying company. Bourdeau had attempted to revive it by contributing over $40,000 of his personal funds but to no avail. In its last breaths, Bourdeau Construction paid more than $38,000 worth of year-end bills that were not challenged by the plaintiffs. In fact, there was only $4,930.61 that had any suggestion of wrongdoing.

For the foregoing reasons, judgment is granted in favor of the plaintiffs in the amount of $3,900.00 against Bourdeau Contracting and against Bourdeau personally in the amount of $1,060.31.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil of Bourdeau Construction (#62) is **GRANTED in part.**

So ordered this 21st day of October, 2016.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE